## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CASELAS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>VERIFONE, INC.,<br><br>                    Defendant. | CIVIL ACTION NO.<br>1:21-cv-3834-VMC |

## OPINION AND ORDER

Before the Court is Defendant VeriFone, Inc.'s ("Defendant") Motion to Dismiss for Failure to State a Claim ("Motion," Doc. 8). Plaintiff Caselas, LLC ("Plaintiff") filed a Response to the Motion ("Response," Doc. 11). Defendant filed a Reply in Support of the Motion ("Reply," Doc. 14). Having reviewed these filings and all matters properly of record, the Court will grant the Motion.

### Background

Caselas, LLC ("Plaintiff") is the owner of several patents (the "Patents") that are at issue in this matter: U.S. Patent Numbers 7,529,698 ("the '698 Patent"); 7,661,585 ("the '585 Patent"); 9,117,206 ("the '206 Patent"); 9,117,230 ("the '230 Patent"); and 9,715,691 ("the '691 Patent"). (Compl. ¶ 9, Doc. 1). Broadly, the

Patents concern the integration of charge-back data[1] in electronic payment

processing. The '698 Patent, for example,

> relates generally to methods which include receiving
> information regarding a transaction involving an
> account, wherein the information regarding the
> transaction is received by a receiver prior to a processing,
> a completion, a consummation, or a cancellation, of the
> transaction,
>
> processing the information regarding the transaction
> with a processing device using information regarding
> the account,
>
> generating a report or a message in response to the
> processing of the information regarding the transaction,
> wherein the report or the message contains information
> regarding a charge-back regarding a previous
> transaction involving the account, and
>
> transmitting the information report to a communication
> device associated with a merchant, vendor, or provider,
> of a good, product, or service.

(*Id.* ¶ 19). The '585, '206, and '230 Patents are similar to the '698 Patent; they

concern apparatuses and methods for receiving information about transactions,

accounts or individuals; processing that information with a processing device;

---

[1] In connection with a *Markman* hearing in the Eastern District of Texas, Plaintiff asserted that the term "chargeback" meant "where a bank or issuer associated with a purchaser's account imposes a forced return of funds on a merchant when the purchaser disputes a charge." The Court adopts this proposed definition for the purpose of this motion only. Pl.'s Opening Claim Constr. Br. at 3, *Caselas, LLC v. First Cmty. Bancshares, Inc.*, No. 2:21-cv-0030-JRG-RSP (E.D. Tex. June 30, 2021) (ECF No. 52 at 7).

generating a report about the transaction, account or individual that includes charge-back information; and transmitting the report to a communication device. (*See id.* ¶¶ 20–22). The '691 Patent focuses on processing, rather than receiving, information, and

> relates generally to apparatuses and methods, which include processing, with a processing device, information regarding an account involved in a transaction involving an individual, wherein the information regarding the account is received by a receiver, and further wherein the information regarding the account is processed prior to a processing, a completion, a consummation, or a cancellation, of the transaction,

> generating, with the processing device, a report or a message in response to the processing of the information regarding the account, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account, and

> transmitting, with or from a transmitter, the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service.

(*Id.* ¶ 23). According to Plaintiff, "the claims of the Asserted Patents recite apparatuses and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers." (*Id.* ¶ 28).

Plaintiff alleges that the Patents have priority to at least January 16, 2001, and that they represent an advance over the available technology at that time

because "the use of chargeback data as an integral data point in payment processing was still many years away." (*Id.* ¶ 24). According to Plaintiff, the Patents "contain inventive concepts" that "transform the underlying non-abstract aspects of the claims into patent-eligible subject matter." (*Id.* ¶ 27). Plaintiff explains that the Patents "overcome deficiencies existing in the art as of the date of invention" and convey benefits such as reduced instances of fraud and cost savings related to nonpayment of receivables. (*Id.* ¶¶ 28–29).

Defendant provides financial services, such as payment processing and account management, to businesses in Georgia and elsewhere. (*Id.* ¶ 7). According to Plaintiff, Defendant's electronic payment processing and account services "comprise a nationwide network of servers, hardware, software . . . and a collection of related and/or linked web pages and electronic communications interfaces." (*Id.* ¶ 59). Plaintiff alleges that this "system comprises an apparatus with multiple interconnected infrastructures that infringe [the Patents]." (*Id.*). Defendant offers these electronic payment processing services through various products, which Plaintiff terms the "Accused Instrumentalities." (*Id.*).

Plaintiff contends that the Accused Instrumentalities "perform a number of critical functions in the overall electronic payment paradigm." (*Id.* ¶ 60). According to the Complaint, "the Accused Instrumentalities generate, maintain, store, and/or utilize" certain financial data, which includes "data relating to

historical chargeback events." (*Id.* ¶ 64). In turn, this historical charge-back data is part of "Account Profile Data" that is stored by the Accused Instrumentalities and that "is integral to the algorithms utilized by the Accused Instrumentalities to carry out electronic payment processing and authorizations." (*Id.*).

Plaintiff commenced this patent infringement action on September 16, 2021. Plaintiff brings the following counts of direct infringement:

- Count I, at least Claim 20 of the '698 Patent;
- Count II, at least Claim 21 of the '585 Patent;
- Count III, at least Claim 13 of the '206 Patent;
- Count IV, least Claim 31 of the '230 Patent; and
- Count V, at least Claim 1 of the '691 Patent.

(collectively, the "Asserted Claims" of the "Asserted Patents"). Plaintiff claims that Defendant's infringing conduct is ongoing and that Defendant "has a policy or practice of not reviewing the patents of others" and, as such, "has been willfully blind" to Plaintiff's patent rights. (*Id.* ¶ 85). Plaintiff seeks a declaratory judgment that Defendant infringed the Patents and damages for the alleged infringement. On November 12, 2021, Defendant filed the instant Motion under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims at issue were not eligible for patent protection. (Doc. 8).

## Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Patent eligibility under 35 U.S.C. § 101 is a question of law. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). As such, a district court may determine patent eligibility "at the Rule 12(b)(6) phase 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). That is, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)

(alterations in original) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)).

## Discussion

The Court first discusses Plaintiff's arguments against making an eligibility determination at this stage. Next, the Court considers whether the Asserted Claims are subject to representative treatment. Lastly, the Court conducts an analysis of patent eligibility under section 101.[2]

## I. The Court Can Consider Eligibility at the Pleading Stage.

The Federal Circuit has held that patentees who adequately allege their claims contain inventive concepts survive a section 101 eligibility analysis under Rule 12(b)(6). *Aatrix Software*, 882 F.3d at 1126–27. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). The Court is thus not required to accept as true conclusory allegations of eligibility. (*See, e.g.*, Compl. ¶ 27) ("[T]he claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter").

Likewise, "[the absence of] claim construction . . . [and] the statutory presumption of validity that exists once a patent issued . . . do not preclude dismissal of this case at the pleadings stage, nor do they preclude a finding of

---

[2] Unless noted otherwise, citations are to Title 35, United States Code.

ineligibility." *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 778 (2022). Moreover, Plaintiff points to no specific claim construction issues which require resolution at the pleadings stage.[3] The Court concludes that this case is ripe for resolution on the Motion.

## II.     Claim 20 of the '698 Patent is Representative.

"In a § 101 analysis, courts may evaluate representative claims." *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 991 (Fed. Cir. 2018) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). In determining whether a claim is representative of other claims, courts have looked to whether claims are "substantially similar and linked to the same abstract idea."[4] *Content Extraction*, 776 F.3d at 1348 (quoting trial court opinion).

Defendant proposes designating Claim 20 of the '698 Patent (the "Representative Claim") as representative of all of the claims of the Asserted Patents. That claim recites:

A computer-implemented method, comprising:

---

[3] The Court has already adopted Plaintiff's proposed construction of "charge-back" advanced in a prior case for the purpose of this motion. *See supra* n.1.

[4] In some ways, this dovetails with the *Alice* factors, as whether a claim is linked to the "same abstract idea" as another claim will often hinge on a determination about whether both claims are abstract and whether either claim has an inventive concept which distinguishes it from another abstract claim. *See Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208 (2014).

*receiving information regarding a transaction involving an account,* wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction;

*processing the information regarding the transaction* with a processing device using information regarding the account;

determining whether or not the transaction is authorized or not authorized and, *if the transaction is authorized, generating a report or a message* in response to the processing of the information regarding the transaction, wherein the report or the message contains information *regarding a charge-back* regarding a previous transaction involving the account; and

*transmitting the report or the message* to a communication device associated *with a merchant, vendor,* or provider, of a good, product, or service.

(*See* Br. Supp. Mot at 5, Doc. 8-1) (emphasis supplied by Defendant).

For comparison, the other Asserted Claims follow on the next page:

| 698 | 585 | 206 | 230 | 691 |
|---|---|---|---|---|
| **Claim 20** | Claim 21 | Claim 13 | Claim 31 | Claim 1 |
| **A computer-implemented method, comprising:** | An apparatus, comprising: | An apparatus, comprising: | A computer-implemented method, comprising: | A computer-implemented method, comprising: |
| **receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction;** | a receiver for receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by the receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction; | | | |
| **processing the information regarding the transaction with a processing device using information regarding the account;** | a processing device, wherein the processing device processes the information regarding the transaction using information regarding the account, | a processing device, wherein the processing device processes information regarding an individual involved in a transaction, | processing, with a processing device or with a computer, information regarding a transaction involving an account; | processing, with a processing device, information regarding an account involved in a transaction involving an individual; |
| **determining whether or not the transaction is authorized or not authorized and, if the transaction is authorized,** | | | | |
| **generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account;** | wherein the apparatus generates a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account; | wherein the apparatus generates a report or a message in response to the processing of the information regarding the individual, wherein the report or the message contains information regarding a previous transaction involving the individual; | generating, with the processing device or with the computer, a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account; | generating, with the processing device, a report or a message in response to the processing of the information regarding the account, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account; |
| **and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service.** | and a transmitter, wherein the transmitter transmits the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. | and a transmitter, wherein the transmitter transmits the report or the message to a communication device associated with a merchant, a vendor, or a provider, of a good, a product, or a service. | and transmitting, with or from a transmitter, the processing device, or the computer, the report or the message to a communication device associated with a merchant, a vendor, or a provider, of a good, a product, or a service. | and transmitting, with or from a transmitter, the report or the message to a communication device associated with a merchant, a vendor, or a provider, of a good, a product, or a service. |

Defendant summarizes the differences between these claims as follows:

| Claim | Type | Limitation(s) |
|-------|------|---------------|
| Claim 21 of the '585 Patent | Apparatus | Adds "transmitter" limitation |
| Claim 13 of the '206 Patent | Apparatus | Adds "transmitter" limitation and that the transaction "involv[es]" an "individual"; omits "receiving" limitation |
| Claim 31 of the '230 Patent | Method | Omits "receiving" limitation and adds generic processing device/computer |
| Claim 1 of the '691 Patent | Method | Omits "receiving" limitation and adds "transmitter" and "individual" limitations |

(Br. Supp. Motion at 5–6, Doc. 8-1). Defendant contends that these additional and discrete limitations do not alter the section 101 analysis. (*Id*.). Defendant also asserts that the proposed Representative Claim is representative of the other, non-asserted independent and dependent claims of the Asserted Patents for similar reasons. (*Id.* at 7–8).

In response, Plaintiff does not explicitly dispute that the proposed Representative Claim is representative of the other *Asserted Claims*, but disputes that it is representative of *all claims* of the Asserted Patents, arguing that other claims have unconventional elements. (Resp. at 23-24, Doc. 11). Plaintiff points to five example claims, three of which are other claims in the '698 Patent: Claim 18 of the '698 Patent (dependent from Claim 1), Independent Claim 19 of the '698 Patent, and Claim 28 of the '698 Patent (dependent from Claim 20), which the Court reproduces below with the respective independent claims in bold:

| 698 | 698 | 698 | 698 | 698 |
|---|---|---|---|---|
| **Claim 1** | Claim 18 | Claim 19 | **Claim 20** | Claim 28 |
| **A computer-implemented method, comprising:** | The computer-implemented method of claim 1, further comprising: | A computer-implemented method, comprising: | **A computer-implemented method, comprising:** | The computer-implemented method of claim 20, |
| **receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction;** | | receiving information regarding a transaction involving an account, wherein the transaction involves a credit account, a credit card account, a charge account, a charge card account, a debit account, a debit card account, an electronic money account, a checking account, or a bank account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction, and further wherein the information regarding the transaction includes information regarding a time period, a time limit, or a time of, a shipment, transfer, or delivery, of a good, product, or service, pursuant to the transaction; | **receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction;** | |
| **processing the information regarding the transaction with a processing device using information regarding the account;** | processing information regarding a second transaction involving the account or a second transaction involving a second account; | processing the information regarding the transaction with a processing device using information regarding the account; | **processing the information regarding the transaction with a processing device using information regarding the account;** | |
| | | | **determining whether or not the transaction is authorized** | |

| | | | or not authorized and, if the transaction is authorized, | |
|---|---|---|---|---|
| **generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account;** | generating a second report or a second message, wherein the second report or the second message contains information regarding a stopping of a payment regarding or involving the account or regarding or involving the second account, or information regarding a non-payment due to insufficient funds regarding or involving the account or regarding or involving the second account | generating a report or a message, wherein the report or the message contains information regarding a chargeback regarding a previous transaction involving the account; | **generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account;** | |
| **and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service.** | and transmitting the second report or the second message to the communication device or to a second communication device. | and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of the good, product, or service, wherein the report or the message is transmitted to the communication device prior to the shipment, transfer, or delivery, of the good, product, or service. | **and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service.** | wherein the communication device is a transaction authorization device. |

Plaintiff asserts that Claim 18 of the '698 patent "recites the unconventional feature of processing a second transaction involving either the same or a different individual from the first . . . [s]uch second transaction is processed such that a second report is generated concerning a stop-payment or insufficient funds scenario." (Resp. at 23, Doc. 11). The only additional limitations of this claim appear to concern running the method of Claim 1 of the '698 patent twice. But "'[s]imply appending conventional steps, specified at a high level of generality," [is] not *enough*' to supply an 'inventive concept.'" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 222 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*, 566 U.S. 66, 82, 77, 72-73 (2012)).

Plaintiff asserts that Claim 19 of the '698 patent "recites that the report/message is transmitted temporally prior to the shipment/transfer/delivery of the goods" and contends that "[t]his is a patentably distinct element which itself is inventive and was unconventional as of January 2001" and that "one of the key advances of the patented inventions over the state of the art was the fact that chargeback evaluation was performed on the front-end of the transaction." (Resp. at 23, Doc. 11). Similar to Claim 18, which concerned how many times the method is implemented, this claim simply alters *when* the method is implemented. *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 754 (Fed. Cir. 2019) ("[T]o supply an inventive concept the

sequence of claimed steps must do more than adapt a conventional assay to a newly discovered natural law. . . .").

Finally, Claim 28 of the '698 Patent (dependent from Claim 20), per Plaintiff "recites the unconventional transmission of the transaction determination to an authorization device of the merchant at the point-of-sale." (Resp. at 23, Doc. 11). But this does not render it dissimilar from the other claims, as all the method claims are computer implemented.

Likewise, the other independent claims offered by Plaintiff do not significantly differ from the proposed Representative Claim. (Resp. at 22–23, Doc. 11) ("Independent Claim 1 of the '206 Patent specifically recites that the front-end information being processed is 'information regarding an individual,'" "Independent Claim 19 of the '698 Patent recites that the report/message is transmitted temporally prior to the shipment/transfer/delivery of the goods."). As Defendant notes "some claims require multiple reports, messages, or transactions; some specify the timing; and some specify the type of information." (Reply at 2, Doc. 14). "None of these minor variations, however, changes the fact that the claims recite the same generic process. . . . And none of these variations offers any new or innovative approach." (*Id.*)

Accordingly, the Court will use Claim 20 of the '698 Patent as the Representative Claim for the remainder of the section 101 analysis.

### III.    The Asserted Patents are Invalid Under Section 101.

Under section 101, "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may be eligible for patent protection. Any analysis under section 101 "begins by identifying whether an invention fits within one of the four statutorily provided categories or patent-eligible subject matter: processes, machines, manufactures, and compositions of matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014). The United States Supreme Court has recognized an "important implicit exception" to this definition of patentable subject matter, however. *Mayo*, 566 U.S. at 70. Specifically, excepted from section 101's reach are "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). This case concerns the final category of "abstract ideas."

As a threshold matter, "an invention is not rendered ineligible for [a] patent simply because it involves an abstract concept." *Alice,* 573 U.S. at 217. The Supreme Court has provided a two-step test for determining whether a patent concerns an abstract idea. First is the determination of "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If the claims focus on a patent-ineligible concept, then the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional

elements 'transform the nature of the claim' into a patent-eligible application." *Id.*
(quoting *Mayo*, 566 U.S. at 79). This second step entails "a search for an inventive
concept—i.e., an element or combination of elements that is 'sufficient to ensure
that the patent in practice amounts to significantly more than a patent upon the
[ineligible concept] itself.'" *Id.* (alteration in original) (quoting *Mayo*, 556 U.S. at
73). An "inventive concept must do more than simply recite 'well-understood,
routine, conventional activity.'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d
1089, 1093 (Fed. Cir. 2016) (quoting *Mayo*, 556 U.S. at 79).

### A.    Step One of *Alice* Analysis

Step one of the *Alice* inquiry asks "what the patent asserts to be the focus of
the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278,
1292 (Fed. Cir. 2020) (punctuation omitted) (quoting *Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161, 1168 (Fed. Cir. 2019)). The Court must focus on the language of the
claims at issue and consider that language in light of the patent's specification. *Id.*

The Federal Circuit Court of Appeals has "consistently held that . . . claims
reciting the collection, transfer, and publishing of data are directed to an abstract
idea." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019). That
court has stated:

> We have explained that the "realm of abstract ideas"
> includes "collecting information, including when limited
> to particular content." *Elec. Power Grp., LLC v. Alstom
> S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting

cases). We have also "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Id.* And we have found that "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* Here, the claims are directed to a combination of these abstract-idea categories. Specifically, the claims here are directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected. *See id.*

*FairWarning*, 839 F.3d at 1093–94.

The Representative Claim, which comprises using a computer to receive information about a credit account prior to the consummation of a transaction, process the information, generate a report about prior transactions where the account was involved with a charge-back, and transmit the report, essentially describes underwriting. In order to avoid becoming an involuntary lender, a prudent merchant selling goods by means other than cash will typically want to ensure there is no reason to doubt performance. It should go without saying that underwriting is a foundational concept in commerce. *See* 15 U.S.C. § 1681(a)(1) ("The banking system is dependent upon fair and accurate credit reporting.").

The Representative Claim is remarkably similar to other claims which Courts have found to be directed to abstract ideas. *See Bilski*, 561 U.S. at 611 ("Claims 1 and 4 in petitioners' application explain the basic concept of hedging,

or protecting against risk."); *Alice,* 573 U.S. at 221 ("It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here."); *FairWarning*, 839 F.3d at 1094–95 ("FairWarning's claims merely implement an old practice in a new environment. . . . These are the same questions (though perhaps phrased with different words) that humans in analogous situations detecting fraud have asked for decades, if not centuries.").

In response, Plaintiff points to the Patent Examiner's findings that the Asserted Patents were not directed to an abstract idea, (Resp. at 19, Doc. 11), but the Court is not "not bound by [the PTO's] guidance," particularly in light of recent Supreme Court and Federal Circuit guidance on this point. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019). The Court concludes that the Representative Claim is directed to an abstract idea.

### B.   Step Two of *Alice* Analysis

This conclusion does not end the analysis, as the Court "must examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72, 79). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* (quoting

*Mayo*, 556 U.S. at 77). This "transformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 556 U.S. at 72).

The Supreme Court has "described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (citing *Mayo*, 566 U.S. at 72-73).

Defendant contends that the Asserted Patents should be invalidated because the Representative Claim "lacks any sort of unique or meaningful limitation that would allow it to rise to the level of a non-routine, specific application." (Br. Supp. Mot. at 15, Doc. 8-1).

In response, Plaintiff contends that applications of the Asserted Patents add inventive concepts. Plaintiff asserts that the Representative Claim (and its dependent claims) "recite[] the application of prior chargeback data at an unconventional juncture in the electronic processing scheme; namely, prior to a completion of the transaction." (Resp. at 20, Doc. 11). But underwriting always occurs before a transaction.

Plaintiff asserts that the Representative Claim (and its dependent claims) "further recite[] the unconventional transmission of the transaction determination

to an authorization device of the merchant at the point-of-sale." (Resp. at 20, Doc. 11). Conducting underwriting via the point-of-sale device is no doubt convenient. But "[t]he introduction of a computer into the claims does not alter the analysis." *Alice*, 573 U.S. at 221. The bottom line here is that the Asserted Patents claim methods and apparatuses which check whether a credit card user has previously charged-back a prior transaction and provide this information to the end user. This is no more than stating the abstract concept of underwriting and stating "apply it." Considered "'as an ordered combination,' the computer components of petitioner's method 'ad[d] nothing . . . that is not already present when the steps are considered separately.'" *Alice,* 573 U.S. at 225 (citing *Mayo*, 566 U.S. at 79-80).

The Asserted Patents are not patent eligible under section 101.

## Conclusion

The Motion to Dismiss (Doc. 8) is **GRANTED** and this civil action is **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the case.

**SO ORDERED** this 30th day of August, 2022.

Victoria Marie Calvert
United States District Judge

21